```
               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF MISSOURI
                      EASTERN DIVISION
```

MARSHA MAYHALL,                )
                               )
            Plaintiff,         )
                               )
        v.                     )     No. 4:06 CV 22 DDN
                               )
MICHAEL J. ASTRUE,[1]          )
Commissioner of Social Security, )
                               )
            Defendant.         )

## MEMORANDUM

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Marsha Mayhall for supplemental security income (SSI) under Title XVI of the Social Security Act (the Act), 42 U.S.C. § 1381 et seq. The parties have consented to the authority of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

## 1. Background

Plaintiff applied for SSI benefits based on disability on September 25, 2003, alleging that she became disabled on March 15, 2003, at the age of 35, due to seizures and hypertension. (Tr. 41, 57.)

Following an evidentiary hearing held on October 27, 2004, an administrative law judge (ALJ) denied benefits on January 27, 2005. (Tr. 6-12.) Because the Appeals Council denied review of the ALJ's decision it became the final decision of the Commissioner for review in this action. (Tr. 2-4.)

---

[1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted as defendant in this suit. 42 U.S.C. § 405(g).

## 2. General Legal Principles

The court's role on judicial review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. Pelkey v. Barnhart, 433 F.3d 575, 577 (8th Cir. 2006). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that detracts from, as well as supports, the Commissioner's decision. See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). So long as substantial evidence supports that decision, the court may not reverse it merely because substantial evidence exists in the record that would have supported a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least 12 months. See 42 U.S.C. § 1382c(a)(3)(A). A five-step regulatory framework governs the evaluation of disability in general. 20 C.F.R. § 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Fastner v. Barnhart, 324 F.3d 981, 983-84 (8th Cir. 2003). If the Commissioner finds that a claimant is disabled or not disabled at any step, a decision is made and the next step is not reached. 20 C.F.R. § 416.920(a)(4).

Here, the ALJ determined that plaintiff was able to perform her past relevant work of cashier. (Tr. 11.) The burden remains on plaintiff to prove she is unable to perform her past relevant work. Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).

## 3. Decision of the ALJ

In the decision denying benefits, the ALJ found that plaintiff was a 37 year old woman with a tenth grade education. She had worked as an assembler, a cashier, and a housekeeper. (Tr. 8.)

The ALJ found that plaintiff has the impairment of "seizure episodes" which, although severe, are not disabling. (Tr. 10.) The ALJ found that the record did not show a definitive diagnosis of seizures, with her treating physician opining that she had "probable" partial, complex seizures. This diagnosis was based primarily on her subjective complaints, because a CT scan of her brain, an MRI, and two EEGs were reported as normal. Her treating physician noted she would not be able to work because of "transportation issues."[2] (Tr. 9.)

---

[2]These findings are supported by substantial evidence. On July 28, 2003, plaintiff visited the neurology department at St. Louis Connect Care. She was concerned she was having seizures. Plaintiff complained of three episodes in November, February, and May, which included a clouding of consciousness, flushing, increased sweating, increased salivation, and an inability to talk. She had severe headaches. The period would last one to two minutes and was followed by a period of confusion. It was concluded she likely had complex partial seizures. Plaintiff was advised to stop driving and operating harmful machinery. It was noted she was taking Lexapro and Cyclobenzaprine. (Tr. 133-38.)

On August 4, 2003, plaintiff visited the clinic complaining of "spells" and anxiety. Her Lexapro dosage was to be increased. (Tr. 110.)

On August 6, 2003, plaintiff had an MRI of her brain. Her temporal lobes were slightly decreased in size bilaterally but it was an otherwise normal MRI. (Tr. 89.)

On September 16, 2003, Frank Gilliam, M.D. completed an EEG report. He opined plaintiff had a history of "spells," which had continued for 10 months, with four spells total. Her EEG was normal in both awake and drowsy states. (Tr. 90, 130.)

On September 22, 2003, treatment notes from St. Louis Connect Care Neurology Clinic noted plaintiff had a history of coughing, sudden onset of headache, visual disturbances, and blackening. Plaintiff reported a near loss of consciousness with right arm flexing. It was noted these events were not typical and their cause was unclear. Her MRI and EEG were unremarkable. (Tr. 128.)

On December 4, 2003, plaintiff visited the clinic for a follow up for her spells. The assessment was seizure disorder and plaintiff was given a prescription for Keppra and told to continue on Lexapro. (Tr. 104.)

On March 2, 2004, Dr. Gilliam noted in an EEG report that plaintiff had a history of seizures. The EEG was considered normal. (Tr. 91.)

Plaintiff reported a seizure about once every two months.[3] But she did not visit the emergency room after any of her episodes. Her most recent two seizures were not as severe. (Tr. 10.)

The ALJ noted that her seizures were infrequent and short in duration. Her condition appeared to be improving because her last two were not as severe. While her treating physician stated that she could not work, it was because of transportation issues, which the ALJ decided was not a relevant factor when determining whether plaintiff was disabled. (Tr. 10.)

The ALJ found that the plaintiff retained the RFC to perform

---

On March 29, 2004, it was noted plaintiff had a history of depression and was being evaluated for spells. Plaintiff had no spells on an increased dosage of Keppra, but this dosage had only been taken by plaintiff for two weeks. Plaintiff was not to drive, use heavy machinery, or work over an open flame. (Tr. 99.)

On May 3, 2004, plaintiff visited the clinic, and it was noted she had no spells since taking Keppra. Plaintiff was diagnosed with epilepsy and depressive disorder. (Tr. 97.)

On August 16, 2004, plaintiff visited the clinic for a routine follow-up visit. It was noted plaintiff had spells on March 24, April 15, and June 11, 2003. One spell was witnessed by her son and boyfriend. She had no loss of bladder or bowel function, and no tongue biting during the spells. Plaintiff was diagnosed with epilepsy, unspecified, and depressive disorder, not elsewhere classified. (Tr. 95-96.)

On November 15, 2004, on a medical questionnaire, a physician who had been treating plaintiff since September 2004 noted that plaintiff "probably" suffered from epilepsy. He noted that the frequency of her seizures was one every month or two. The seizures had not been documented by an EEG. He noted she did not have convulsions, only loss of consciousness. He noted she had no limitations on her activity during the day. He opined she had "probable complex partial seizures, uncontrolled." He later opined it was "unclear" whether medication controlled her seizures. The physician opined plaintiff was not able to perform a full-time job, because she had limited access to transportation. (Tr. 92-94.)

[3]Plaintiff submitted a list of the dates she experienced seizures, and she reported her first episode was November 2002. She alleged that her last two were in August 2004 and October 2004, but that these two "didn't go all the way" and only lasted one minute. She never visited the emergency room. She experienced 12 seizures total. (Tr. 51.)

work activity in which she is not required to drive an automobile, or work at heights, around an open flame, or in or around other dangerous or hazardous equipment/machinery.

(Tr. 10.) The ALJ found that plaintiff could return to her past relevant work as a cashier in a convenience store,[4] as the job is generally performed in the national economy and as she actually performed it. When making his decision, the ALJ considered plaintiff's subjective complaints of her symptoms,[5] but found that not all of them were fully credible. (Tr. 10, 11.)

### 4. **Plaintiff's Grounds for Relief**

Plaintiff argues that 1) the ALJ failed to properly consider all of her medically determinable impairments, specifically, her diagnosis of depression, 2) the ALJ failed to properly consider plaintiff's RFC under the applicable standard, 3) the ALJ failed to properly evaluate

---

[4]Plaintiff reported that her previous jobs were as an assembler, a cashier, and a housekeeper. She left her most recent job as an assembler in March 2003 because the company relocated. (Tr. 68-69.) In her job as a cashier, plaintiff reported waiting on customers, counting money, making change, and completing shift paperwork. She stood for seven hours and sat and walked for one hour in an eight hour workday. She lifted up to 20 pounds, and lifted 10 pounds frequently. (Tr. 72.)

[5]Plaintiff reported that she is able to clean, do laundry, cook, and care for her children. She pays bills, uses a checkbook, is able to complete a money order and count change. She reported that she does not mow the lawn or go to the post office because she cannot drive, but she can do dishes, make the bed, iron, vacuum, sweep, take out the trash, do home repairs, rake leaves, garden, and bank. She reported having to shop quickly because she relies on someone else to take her to the store. (Tr. 58-59.)

Plaintiff reported playing bingo, getting her daughter ready for school, fixing meals, watching television, visiting friends, and having no problems following instructions. (Tr. 60.)

At the hearing before the ALJ plaintiff testified that she never went to the hospital after a seizure. (Tr. 151, 153-54.) She testified her most recent seizure in October was not as bad as normal. (Tr. 153.) She watches television, shops, and does housework. (Tr. 157.)

plaintiff's subjective complaints, and 4) the ALJ erred when finding plaintiff was capable of performing her past relevant work.

## 5. Discussion

### A. Failure to consider plaintiff's depression

Plaintiff argues that the ALJ failed to consider her diagnosis of depression, and did not even mention it in his decision. Defendant argues that plaintiff never alleged that her depression or any mental impairment prevented her from working.

In her application for disability benefits, plaintiff alleges that she became disabled on March 15, 2003, due to seizures and hypertension. (Tr. 41, 57.) She does not mention depression as preventing her from working or limiting her daily activities in any way in her application, (Tr. 57-61), nor did she mention depression, or any limitations or symptoms stemming from any mental impairment, at the hearing. The ALJ did not have to consider the diagnosis of depression. When the plaintiff provides no evidence that a mental impairment is limiting her activities, the ALJ is under no duty to consider it or more fully develop the record. "The ALJ . . . [has] no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." Brockman v. Sullivan, 987 F.2d 1344, 1348 (8th Cir. 1993). Here, plaintiff did not allege in her application, or at the hearing, that her depression rendered her unable to work. See Anderson v. Barnhart, 344 F.3d 809, 814 (8th Cir. 2003) (plaintiff waived argument that obesity rendered him disabled when he did not mention it in his application or during hearing).

Further, there is no indication from the medical evidence in the record that plaintiff's mental impairment was so serious as to render her unable to work. On June 30, 2003, plaintiff was prescribed Lexapro [6] for anxiety. (Tr. 111-12.) On May 3, 2004, plaintiff visited a clinic and was diagnosed with depressive disorder. (Tr. 97.) On August 16,

---

[6]Lexapro is used to treat depression and generalized anxiety disorder. Webmd.com/drugs. (Last visited Feb. 27, 2007.)

2004, plaintiff was diagnosed with depressive disorder, not elsewhere classified. (Tr. 95-96.) There was no elaboration on this diagnosis. The record does not contain substantial evidence that plaintiff was treated for depression and no doctor stated that her anxiety was limiting.

Because plaintiff did not allege a mental impairment, and because there is little on the record documenting treatment for one, plaintiff's first argument is without merit.

**B. Medical Evidence of RFC**

Plaintiff also argues that there is not substantial medical evidence supporting the RFC attributed to plaintiff. She argues that the ALJ did not give proper weight to the opinion of her treating physician. The ALJ found that the plaintiff retained the RFC to perform

> work activity in which she is not required to drive an automobile, or work at heights, around an open flame, or in or around other dangerous or hazardous equipment/machinery.

(Tr. 10.)

The RFC is "the most [a claimant] can still do despite" his or her "physical or mental limitations." 20 C.F.R. § 416.945(a). When determining plaintiff's RFC, the ALJ must consider "all relevant evidence" but ultimately, the determination of the plaintiff's RFC is a medical question. Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). As such, the determination of plaintiff's ability to function in the workplace must be based on some medical evidence. Id.; see also Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).

When determining the RFC, "[t]he opinions of the claimant's treating physicians are entitled to controlling weight if they are supported by and not inconsistent with the substantial medical evidence in the record." Stormo v. Barnhart, 377 F.3d 801, 805 (8th Cir. 2004). "Such opinions are given less weight if they are inconsistent with the record as a whole or if the conclusions consist of vague, conclusory statements unsupported by medically acceptable data." Id.; Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). "By contrast, '[t]he opinion of a consulting physician who examines a claimant once or not at all

-7-

does not generally constitute substantial evidence.'" Singh, 222 F.3d at 452 (quoting Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998)). The ALJ must set forth its reasons for the weight given to a treating physician's assessment. Singh, 222 F.3d at 452.

As set forth above, on November 15, 2004, a physician[7] who had been treating plaintiff since September 2004 noted that plaintiff "probably" suffered from complex partial seizures. It was the opinion of the doctor that plaintiff was not able to work full-time, because she had limited access to transportation. (Tr. 92-94.)

The ALJ considered this treating physician's opinion, but found it not fully credible, because it was based upon her inability to drive. The ALJ concluded that this did not preclude all work for plaintiff. Further, the treating physician could not make a definite diagnosis of epilepsy, stating that plaintiff had "probable" seizures, that they were infrequent, that they did not limit her daily activities, and that her prognosis was "good." The ALJ did consider his opinion and found that it did not contain substantial evidence that plaintiff was unable to work.

There is substantial evidence on the record supporting the RFC attributed to plaintiff. All of plaintiff's objective medical tests, including an MRI, CT scan, and two EEGs, were normal and showed no seizure activity. (Tr. 87, 89-91, 113, 130.) No physician, not even her treating physician, placed any more limitations on plaintiff than those contained in the RFC. Because plaintiff suffered from possible seizures, her treating physician opined she should not drive. (Tr. 94.) She was advised by doctors not to drive, operate heavy machinery, or work over an open flame. (Tr. 99, 101.) These limitations are exactly those mentioned in the ALJ's RFC.

---

[7]This physician is unknown because his signature is illegible. (See Tr. 94.)

**C. Subjective Complaints**

Plaintiff argues that the ALJ's determination of her credibility was not in accord with the factors stated in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

"The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians . . . ." Polaski, 739 F.2d at 1322. Factors to be considered include the claimant's daily activities, the duration, frequency, and intensity of the pain, any precipitating factors, whether the claimant has been taking pain medication and the dose, and functional restrictions. Id.; Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003). The ALJ may not discredit subjective complaints based solely on personal observation. Polaski, 739 F.2d at 1322. "Subjective complaints may be discounted if there are inconsistencies in the record as a whole." Singh, 222 F.3d at 452. "An ALJ who rejects such complaints must make an express credibility determination explaining the reasons for discrediting the complaints." Singh, 222 F.3d at 452.

Plaintiff argues that the ALJ did not cite to Polaski when rendering his decision. The ALJ is not required to cite directly to Polaski when making his credibility determination. Further, he is not required to discuss every factor so long as the framework is recognized and followed. Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004). Even though, as here, the ALJ did not cite Polaski nor mention every factor, the opinion will not be automatically reversed.

> An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where ... the deficiency probably had no practical effect on the outcome of the case.

Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996) (quoting Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987)).

Specifically, plaintiff argues the ALJ failed to consider her boyfriend's observations, the side effects of her medication, and that her episode's after-affects lasted up to 30 minutes. (Doc. 16 at 14.)

The ALJ did not mention in his opinion plaintiff's reported side effects of her medication, Keppra.[8] Plaintiff testified that her medication made her feel sluggish. (Tr. 156.) Her treating physician noted that her medication may have a sedative effect. (Tr. 94.) However, there is no indication from the record that plaintiff reported this side effect to any physician, and no physician reported she was actually experiencing any side effects. "[I]t was reasonable for the ALJ to consider the fact that no medical records during this time period mention [plaintiff] having side effects from any medication." Depover, 349 F.3d at 566; see also Richmond v. Shalala, 23 F.3d 1441, 1443 (8th Cir. 1994) (although plaintiff testified about side effects, there was no indication plaintiff complained to doctors about them). There is not substantial evidence on the record supporting a finding that plaintiff's medication caused her limiting side effects.

Further, despite allegedly feeling sluggish, plaintiff was able to partake in a variety of activities, including bingo, cleaning her house, doing laundry, preparing meals, visiting friends, shopping, and caring for her children. (Tr. 58-60.) See Curran-Kicksey v. Barnhart, 315 F.3d 964, 969 (8th Cir. 2003).

The ALJ did not mention her boyfriend's hearing testimony about his observations of her seizure episodes. This testimony, that he witnessed two disturbing episodes within the six months before the hearing (Tr. 159-60) added no new information to the record. His testimony was consistent with the ALJ's findings that she suffered seizures that were infrequent. The failure of the ALJ to discuss the testimony of plaintiff's boyfriend did not prejudice plaintiff's case.

The ALJ found that plaintiff's allegations about limitations were not totally credible. (Tr. 11.) This finding is supported by substantial evidence. Plaintiff's subjective complaints are inconsistent with the record as a whole. She never visited the emergency room after an episode. "[A] failure to seek treatment may indicate the relative seriousness of a medical problem." Tate v. Apfel,

---

[8]Keppra is used to treat seizure disorders. Noted side effects include drowsiness, dizziness, weakness, tiredness, constipation, and loss of coordination. Webmd.com/drugs. (Last visited Feb. 27, 2007.)

-10-

167 F.3d 1191, 1197 (8th Cir. 1999) (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)). Plaintiff did not feel that the episodes were so serious as to require immediate medical attention. The episodes were improving, and she experienced less frequent and less severe seizure-like episodes after taking Keppra.[9] See Pepper v. Barnhart, 342 F.3d 853, 856 (8th Cir. 2003) (improvment with medication constitutes substantial evidence). The episodes were infrequent and the effects were not long lasting, and plaintiff did not restrict her daily living beyond those restrictions contained in her RFC.

Therefore, there is substantial evidence supporting the ALJ's evaluation of plaintiff's credibility.

**D. Past Relevant Work**

Plaintiff argues the ALJ erred when concluding she could perform her past relevant work. Specifically, she argues the ALJ did not make findings concerning the mental demands of her past relevant work. (Doc. 16 at 14-16.)

"The ALJ evaluates a claimant's ability to do past relevant work based on a review of the claimant's residual functional capacity and the physical and mental demands of his past work." Evans v. Shalala, 21 F.3d 832, 833 (8th Cir. 1994). "The ALJ must specifically set forth the claimant's limitations, both physical and mental, and determine how those limitations affect the claimant's residual functional capacity." Pfitzner v. Apfel, 169 F.3d 566, 568 (8th Cir. 1999) (quoting Groeper v. Sullivan, 932 F.2d 1234, 1238-39 (8th Cir. 1991)). Further, the ALJ must then "make explicit findings regarding the actual physical and mental demands of the claimant's past work." Pfitzner, 169 F.3d at 569.

---

[9]On March 29, 2004, medical notes show plaintiff had no spells on an increased dosage of Keppra. Plaintiff was not to drive, use heavy machinery, or work over an open flame. (Tr. 99.)

On May 3, 2004, plaintiff visited the clinic, and it was noted she had no spells since taking Keppra. (Tr. 97.)

Plaintiff reported two more seizures in August and October 2004, but that these were shorter in duration and less severe. (Tr. 51.)

-11-

Here, the ALJ found that plaintiff had performed past relevant work as a cashier, after setting forth plaintiff's limitations that he found credible and backed by substantial evidence. He concluded that she was able to perform this work as it is generally performed in the national economy and as she actually performed it. He found that work in a convenience store as a cashier is not considered an environmentally hazardous job. (Tr. 11.)

The ALJ was not required to discuss the mental demands of plaintiff's past relevant work because he determined that she had no limiting mental impairments. Rose v. Apfel, 181 F.3d 943, 945 (8th Cir. 1999). Because plaintiff's RFC contains only environmental restrictions, he was only required to make a finding about the environmental restrictions of plaintiff's past relevant work. See id. The ALJ was not required to procure vocational expert testimony, because that is only required when the ALJ determines plaintiff cannot return to her past relevant work. See Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996).

Here, the ALJ considered plaintiff's own description of how she performed her job, and how the job is done in the national economy.[10] (Tr. 11, 72.) Neither description of the job requirements included environmental hazards, or required her to drive a car, work over an open flame, or work with hazardous machinery. Therefore, substantial evidence supports the ALJ's decision that plaintiff can perform her past relevant work, both as she actually performed it and how it is performed generally in the national economy.

---

[10]The Dictionary of Occupational Titles states that tasks required for this job include receiving payment in various forms, issuing receipts, counting money, greeting customers, maintaining a clean and orderly work area, identifying prices, redeeming coupons, resolving customer complaints, answering questions, and cashing checks. Dictionary of Occupational Titles, available at http://online.onetcenter.org/link/summary/ 1-2011.00. (Last visited Feb. 27, 2007.)

-12-

Therefore, the decision of the Commissioner of Social Security is affirmed. An order in accordance with this memorandum is filed herewith.

          /S/ David D. Noce
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on March 7, 2007.